UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THE RICHARD AND ANNE RUBIN
FAMILY TRUST,

             Plaintiff,

       v.                                   **MEMORANDUM AND ORDER**
                                               23-CV-9390 (RPK) (SIL)

ATTENTION TO DETAIL
CONSTRUCTION CORP. and
CHRISTOPHER MARTIN,

             Defendants.

-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      This action arises out of a home renovation gone wrong. Plaintiff The Richard and Anne Rubin Family Trust claims that defendants Christopher Martin and his company Attention to Detail Construction Corp. have failed to complete the renovation of plaintiff's summer home on time, on budget, and according to industry standards. Plaintiff brings claims for breach of contract and unjust enrichment against Attention to Detail, and for fraud against Martin personally. Defendants move to dismiss the suit for lack of subject-matter jurisdiction and, in the alternative, to dismiss the unjust enrichment claim as duplicative, to dismiss any attempt to hold Martin liable for the claims against his company through the doctrine of piercing the corporate veil, and to dismiss the fraud claim as duplicative and for failure to state a claim.

      Defendants' motion is granted in part and denied in part. Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied, as is its motion to dismiss plaintiff's claim for unjust enrichment. Defendants' motion to dismiss plaintiff's claims against Martin is granted.

1

**BACKGROUND**

The following facts are taken from plaintiff's complaint and are assumed to be true for the purposes of this order.

Plaintiff is a common law trust with two trustees: Richard Rubin and Anne Rubin. Compl. ¶ 5 (Dkt. #1). Plaintiff holds title to 86 Sands Court, Long Beach, NY 11561, the property at issue in this action. *Ibid.* On or about December 1, 2019, defendant Christopher Martin pitched the Rubins on hiring his company, defendant Attention to Detail Construction Corp., to undertake the renovation of the property. *Id.* ¶ 12. During these conversations, Martin represented that his company "was a well-known and competent home renovation construction company centered in Long Island, New York for two decades" and that Attention to Detail "would competently and timely perform the [renovation] in accordance with industry standards and adhere to its own budget." *Id.* ¶¶ 13, 38. Plaintiff alleges that in reality, however, Martin knew Attention to Detail "did not have the capital, expertise or capability to timely and competently complete the" job. *Id.* ¶ 39. Plaintiff alleges that Martin "completely dominates and wholly controls all aspects of" Attention to Detail. *Id.* ¶ 8.

Later in December, plaintiff and Attention to Detail entered a contract to renovate the property; Attention to Detail agreed to serve as the general contractor and to perform renovations including but not limited to adjusting the bedroom walls to add closet space, removing walls throughout the property, remodeling the bathrooms, adding a pool, and associated electrical and plumbing work. *Id.* ¶ 14. Attention to Detail estimated the renovation would cost $322,500 and take between six and nine months to complete. *Id.* ¶¶ 15–16.

Plaintiff alleges that, "[r]ather than promptly completing the Work, [Attention to Detail] sporadically worked at the Property, hastily performed some of the Work, leaving the Property

2

with several defects and performed other work that was non-conforming and utterly failed to meet basic industry standards." *Id.* ¶ 18. By way of example, plaintiff alleges that Attention to Detail installed a pool that is four inches shallower than the specifications and that Attention to Detail's faulty installation of a window caused extensive water damage to the property. *Id.* ¶¶ 19–20. Plaintiff also alleges that Attention to Detail failed to properly supervise its subcontractors and that one subcontractor has threatened a lien against the property over missing payments from Attention to Detail. *Id.* ¶ 21.

Three years into the renovation, plaintiff alleges that it has paid Attention to Detail $604,265.31, but that Attention to Detail has "abandoned" the renovation and plaintiff has received nothing of value in return. *Id.* ¶¶ 22–23.

Plaintiff filed this suit in December 2023, invoking the Court's diversity jurisdiction and bringing three claims: (1) breach of contract against Attention to Detail, (2) unjust enrichment against Attention to Detail, and (3) fraud against Christopher Martin. *See id.* ¶¶ 9–10, 25–42. Plaintiff's complaint also gestures towards piercing the corporate veil to hold Martin liable for the claims asserted against his company. *See id.* ¶¶ 8, 39. Defendants now move to partially dismiss. *See* Defs.' Mem. of L. in Supp. of Mot. to Dismiss ("Defs.' Mot.") (Dkt. #15-9).

## LEGAL STANDARD

### I. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d

3

Cir. 2000)).  When considering a motion to dismiss under Rule 12(b)(1), a court "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  But "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (citation omitted).  "In that case, the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'"  *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113).

## II.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid*. (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).  "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (quotation marks omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of*

4

*N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id*. at 678–79.

## DISCUSSION

Defendants move to dismiss for lack of subject-matter jurisdiction, disputing that the parties are diverse. *See* Defs.' Mot. 10–11. In the alternative, defendants move to dismiss the claim for unjust enrichment against Attention to Detail as duplicative of the breach-of-contract claim, *see id.* at 7–8; to dismiss as insufficiently pleaded any claims against Martin based on an attempt to pierce the corporate veil, *see id.* at 5–7; and to dismiss the fraud claims brought against Martin directly as duplicative and insufficiently pleaded, *see id.* at 8–10. Defendants' motion to dismiss is denied as to subject-matter jurisdiction and plaintiff's claim for unjust enrichment, and granted as to the claims against Martin.

### I.  Subject-Matter Jurisdiction

Defendants' motion to dismiss for lack of subject-matter jurisdiction is denied.

A federal district court has original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" between "citizens of different States." 28 U.S.C. § 1332(a)(1). The parties agree that both defendants are citizens of New York, *see* Compl. ¶ 9; Defs.' Mot. 11, and the amount in controversy clearly exceeds $75,000, *see* Compl. ¶¶ 23, 29, 36, 42. Accordingly, the only disputed issue is plaintiff's citizenship.

"For purposes of diversity jurisdiction, the citizenship of a traditional trust is determined by the trustee's citizenship." *Michael David Props. LLC v. Continental Cas. Co.*, No. 24-CV-3600 (NJC) (ARL), 2025 WL 267728, at *3 (E.D.N.Y. Jan. 22, 2025) (citing *Raymond Loubier*

5

*Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017)). Plaintiff has two trustees: Richard and Anne Rubin. Compl. ¶ 5. In turn, the citizenship of a natural individual "is determined by his domicile[,] in other words the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (ellipsis, brackets, and citation omitted). An individual can only have one domicile at any given time. *Ibid.* "For purposes of diversity jurisdiction, the relevant domicile is the parties' domicile at the time the complaint was filed." *Ibid.*

In conducting the domicile inquiry, "courts should consider a totality of the circumstances, looking to factors like: current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, members in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes." *Chen v. Sun*, No. 13-CV-280 (ALC) (KNF), 2016 WL 270869, at *2 (S.D.N.Y. 2016) (quotation marks and citation omitted); *accord Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009) (listing similar factors). A party's self-serving declarations regarding his own domicile, "particularly with regard to an intent to retain or establish one," are "subject to judicial skepticism" and "accorded little weight . . . when they are in conflict with the facts or a party's actual conduct." *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 101 (E.D.N.Y. 2019) (quoting 13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3612 (3d ed.)).

Plaintiff alleges that both Rubins are citizens of California. Compl. ¶ 5. Defendants dispute this, presenting evidence that the Rubins are actually domiciled at the property at issue—86 Sands Court, Long Beach, NY 11561—and are therefore citizens of New York. Defendants

6

present five pieces of evidence: (1) a deed to the subject property dated November 2019 transferring the property to the Rubins, which lists the property itself as the address for the Rubins, *see* Decl. of David Lieser, Ex. 2 (Dkt. #15-3); (2) a scanned bill entitled "Statement of School Taxes," apparently relating to property taxes levied for the Long Beach City School District for the 2019–2020 school year, that lists the subject property as the Rubins' mailing address, *see id.*, Ex. 5 (Dkt. #15-6); (3) a sworn affidavit, dated February 8, 2023, submitted by Richard Rubin to the Town of Hempstead Department of Buildings stating that Mr. Rubin resides at the subject property, *see id.*, Ex. 6 (Dkt. #15-7); (4) a Westlaw PeopleMap Report, dated December 22, 2023, which reports the subject property as Richard Rubin's address between January 1, 2019 and May 31, 2023, *see id.*, Ex. 7 (Dkt. #15-8); and (5) text messages between Christopher Martin and Richard Rubin which appear to show that Mr. Rubin resided at the subject property between March and July 2023, *see* Reply Decl. of David Lieser, Ex. 8 (Dkt. #17-1).

In response, plaintiff presents a sworn affidavit from Richard Rubin averring that he and Anne Rubin have maintained a California address as their primary residence for the last eight years and that the subject property was intended to be only a summer and holiday home. Decl. of Richard Rubin ¶¶ 3–5 (Dkt. #16). Plaintiff also provides (1) a deed to the subject property dated October 2020 transferring the property from the Rubins to the trust, *see id.*, Ex. A (Dkt. #16-1); and (2) a copy of the Rubins' joint federal income tax return for the tax year 2022, both of which list a California address, *see id.*, Ex. B (Dkt. #16-2).

On balance, the Court finds that plaintiff has met its burden to establish diversity. To be sure, defendants' evidence definitively establishes that the Rubins maintain *a* residence at the subject property—a fact that the Rubins have not contested. But an individual's citizenship is

7

determined by their domicile, not their residence. *Finnegan*, 409 F. Supp. 3d at 96. Where, as here, "there is evidence of more than one residence, . . . the court looks to the party's intent." *Ibid.*

The evidence bearing on the Rubins' intent regarding their domicile is somewhat sparse, but what evidence there is points to California. Richard Rubin averred that he and his wife pay income taxes as California residents and have provided evidence to that end. *See* Decl. of Richard Rubin ¶ 4; *id.*, Ex. B. And he avers that the subject property was only ever intended to be a summer and holiday home, and that the Rubins maintain their principal residence in California at the address where they have lived for eight years. *See id.* ¶¶ 3–5.

The evidence provided by defendants does not cast doubt on these statements. The fact that the Rubins owned the subject property (via the trust) and resided there from time to time is perfectly consistent with the subject property serving as the Rubins' summer home, but not their permanent domicile. *See Money Tree Cap. Funding, LLC v. Money Tree Cap. Mkts. LLC*, No. 22-cv-10084 (ER), 2023 WL 7412278, at *7 (S.D.N.Y. Nov. 9, 2023) ("[A] party can own and visit a residence during vacations and not be domiciled in that state."). The Court finds no inconsistency between defendants' evidence and the Rubins' averments of California domicile, credits the Rubins' averments, and therefore finds plaintiff's burden to establish diversity satisfied on the current record.

## II. Unjust Enrichment Claim

Defendants' motion to dismiss plaintiff's unjust enrichment claim as duplicative of its breach-of-contract claim is denied.

To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*,

8

973 N.E.2d 743, 746 (N.Y. 2012) (citation omitted). "Unjust enrichment 'is available only in unusual situations when circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Cohen v. BMW Invs. LP*, 668 F. App'x 373, 374 (2d Cir. 2016) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (2012)) (ellipses omitted). It "is not a catchall cause of action to be used when others fail," nor is it "available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello*, 967 N.E.2d at 1185.

Defendants do not argue that plaintiff has not pleaded the elements of an unjust enrichment claim—only that plaintiff may not pursue it while simultaneously claiming breach of contract. *See* Defs.' Mot. 7–8. True, "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative under New York law." *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020) (citing *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006)); *accord Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 252, 263 (2d Cir. 1999) ("Although a plaintiff may sometimes defer the election of remedies and seek damages from a jury on alternative theories of breach of contract and quantum meruit, this is true only where there is a dispute over the existence, scope, or enforceability of the putative contract." (citation omitted)).

Defendants' argument falls short. Where there is a "bona fide dispute" as to whether the contract "cover[s] the dispute in issue, a plaintiff may proceed upon a theory of quantum meruit," or unjust enrichment, "as well as contract." *Vertex Constr. Corp. v. T.F.J. Fitness LLC*, No. 10-CV-683 (CBA) (ALC), 2011 WL 5884209, at *4 (E.D.N.Y. Nov. 23, 2011). "[B]ecause it is difficult to determine the validity or scope of the contract at the pleading stage, courts routinely reject arguments [to dismiss claims for unjust enrichment] as premature." *Ibid.*; *accord Andritz*

*Hydro Can., Inc. v. Rochester Gas & Elec. Corp.*, No. 20-CV-6772 (FPG), 2021 WL 3115425, at *10 (W.D.N.Y. July 22, 2021) ("Courts generally dismiss claims sounding in quasi contract on the pleadings only when it is clear from the face of the complaint that there exists an express contract that *clearly controls*." (brackets and citation omitted) (emphasis original)); *see also Union Bank, N.A. v. CBS Corp.*, No. 08-CV-8362 (PGG), 2009 WL 1675087, at *8 (S.D.N.Y. June 10, 2009) ("Although both sides argue that they should prevail under the [contracts,] the Court could later conclude that these agreements do not address the events that took place here.").

Neither party has submitted a copy of the original December 2019 agreement between the parties that plaintiff alleges serves as the basis for its breach-of-contract claim. *See* Compl. ¶¶ 12, 14. Defendants point to an email from Christopher Martin to the Rubins attaching a "proposal for [the] backyard renovation," but this email is dated August 2022, over two years after the contract is alleged to have been entered, and contains no indication that the Rubins agreed to its terms. *See* Decl. of David Lieser, Ex. 3 (Dkt. #15-4). Further, it is questionable whether the Court can consider this document on defendants' motion to dismiss, as it is not referenced in plaintiff's complaint, does not appear to be integral to plaintiff's claims, and is not otherwise subject to judicial notice. Regardless, because the Court cannot be sure at this stage of the litigation that there is no "dispute over the . . . scope . . . of the putative contract" and whether it covers the dispute here, *Reilly*, 181 F.3d at 263, plaintiff's unjust enrichment claim may proceed.

### III.    Piercing the Corporate Veil

To the extent that plaintiff is asserting breach-of-contract and unjust enrichment claims against Martin based on piercing the corporate veil, defendants' motion to dismiss such claims against Martin is granted.

10

Under New York law, "[a] theory of liability based on piercing the corporate veil is not an independent cause of action." *138-77 Queens Blvd LLC v. Silver*, 682 F. Supp. 3d 271, 279 (E.D.N.Y. 2023) (citing *Morris v. N.Y. State Dep't of Tax'n & Fin.*, 623 N.E.2d 1157, 1160–61 (1993)). "The doctrine is typically invoked by a third party 'seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation.'" *Ibid.* (quoting *Morris*, 623 N.E.2d at 1160). "[T]he standard for veil-piercing is very demanding," and "disregard of the corporate form is warranted only in extraordinary circumstances." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners LP*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (brackets and citation omitted).

A party seeking to pierce the corporate veil must sufficiently allege that (1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and (2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (citation omitted). In assessing whether the first element of "domination" is met, the Second Circuit has identified a non-exhaustive list of ten factors to consider:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity[;] and (10) intermingling of property between the entities.

*Ibid.* (citation omitted).

By the Court's reading, plaintiff's complaint does not facially purport to hold Martin liable for the claims against Attention to Detail under a theory of veil-piercing. *See* Compl. ¶¶ 25–36 (bringing the claims for breach of contract and unjust enrichment against Attention to Detail

11

alone). Nevertheless, defendant moves to dismiss plaintiff's claims to the extent they are predicated on veil-piercing, *see* Defs.' Mot. 5–7, and plaintiff opposes, arguing in a footnote that "[d]efendants' arguments concerning veil-piercing are also insufficient to warrant dismissal, as the Complaint aptly alleges that the Corporation disregards the corporate form and perpetuated a fraud in agreeing to undertake the work at issue in this action while knowing that it did not have the means to complete it, i.e., that the corporation was undercapitalized," Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 9 n.1 (Dkt. #16-3).

To the extent, then, that the complaint is construed to present a theory of veil-piercing, it fails. "The mere claim that the corporation was completely dominated by the owners, or conclusory assertions that the corporation acted as their 'alter ego,' without more, will not suffice to support the equitable relief of piercing the corporate veil." *Goldman v. Chapman*, 844 N.Y.S.2d 126, 127 (App. Div. 2007); *accord Capmark Fin. Grp. Inc.*, 491 B.R. at 347 ("[C]onclusory allegations of dominance and control will not suffice to defeat a motion to dismiss."); *cf. City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) ("[W]hile it is generally not sufficient, at the pleading stage, to make conclusory allegations of control, setting forth some examples of alleged domination may provide sufficiently specific factual allegations to support an alter ego claim and result in denial of the motion to dismiss." (quotation marks and citation omitted)). The only allegations in the complaint bearing on Martin's control over Attention to Detail are conclusory. The complaint alleges that, "[u]pon information and belief, Defendant Christopher Martin completely dominates and wholly controls all aspects of the Corporation such that Defendant Christopher Martin comingles his funds with the Corporation's funds and otherwise does not adhere to corporate formalities" and that, when Martin represented to plaintiff in December 2019 that Attention to Detail could take on the project, he knew that the company "did

12

not have the capital . . . to timely and competently complete the work." Compl. ¶¶ 8, 39. These are boilerplate allegations that do no more than recite one of the legal requirements to pierce the corporate veil and name a handful of the relevant factors, without any specifics or examples in support. Plaintiff thus offers no allegations from which to plausibly infer that Martin in fact exercises such total domination over Attention to Detail that piercing the corporate veil would be justified.

Accordingly, plaintiff's breach-of-contract and unjust enrichment claims are dismissed to the extent they seek to hold Martin individually liable on a veil-piercing theory of liability.

### IV. Fraud Claim

Defendants move to dismiss plaintiff's claim for fraud against Martin on several grounds. First, they suggest that the claim fails because plaintiff has not put forth a basis to pierce the corporate veil with respect to Attention to Detail. *See* Defs.' Mot. 5–7; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") 5–6 (Dkt. #18). Second, they suggest that the claim fails because it is duplicative of the breach-of-contract claim against Attention to Detail. Finally, defendants argue that plaintiff has failed to state a claim. While the first two arguments lack merit, as explained below, the third succeeds.

#### A. Piercing the Corporate Veil

Defendants are mistaken in suggesting that plaintiff's failure to plausibly plead a case for piercing the corporate veil alone requires dismissal of the fraud claim against Martin. Under New York law, although "the officers and directors of a corporation cannot be held individually liable for their company's obligations, . . . officers and directors of a corporation may be held liable for fraud if they participate in it or have actual knowledge of it." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (brackets, quotation marks, and citations omitted); *see Stillman v. De Vos*, No. 23-CV-7802 (JPC), 2024 WL 3797071, at *3 (S.D.N.Y. Aug. 13, 2024) ("In particular, a corporate

13

officer is individually liable for fraudulent acts or false representations of his own, or in which he participates, even though his actions in such respect may be in furtherance of the corporate business." (citation omitted)). Unlike the breach-of-contract and unjust enrichment claims, plaintiff's fraud claim does not seek to hold Martin liable for a corporate liability solely by virtue of his relationship to Attention to Detail, but rather for his own purportedly fraudulent statements to plaintiffs. *See* Compl. ¶¶ 7, 12–13, 37–42. Thus, "it is not necessary here to pierce the corporate veil because the fraud claim is being asserted against [Martin] individually." *Sun Prods. Corp. v. Bruch*, No. 10-CV-4816 (SAS), 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011), *aff'd*, 507 F. App'x 46 (2d Cir. 2013).

### B.   Duplicativeness

Because Martin is not a party to the contract between plaintiff and Attention to Detail, defendants' argument that plaintiff's claim for fraud is duplicative of the breach-of-contract claim is flawed. While "[i]t is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations,'" *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 486 (S.D.N.Y. 1997) (citation omitted), the underlying rule "that a plaintiff may not base a fraud claim on a breach of contract has no application to anyone who is not a party to the relevant contract," *Apple v. Atl. Yards Dev. Co., LLC*, No. 11-CV-5550 (JG) (JMA), 2012 WL 2309028, at *7 (E.D.N.Y. June 18, 2012) (citing cases); *accord Sun Prods. Corp.*, 507 F. App'x at 48 ("While it is true that a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations, a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." (quotation marks, emphasis, and citations omitted)). Thus, "a plaintiff who is induced to enter into a contract with a company due to fraudulent misrepresentations by that company's president may

14

assert a fraudulent inducement claim against the president." *Apple*, 2012 WL 2309028, at *7; *see, e.g.*, *Wild Bunch, SA v. Vendian Ent., LLC*, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017); *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 390 (S.D.N.Y. 2023). Because plaintiff's contract claim is predicated on an agreement between plaintiff and Attention to Detail, *see* Compl. ¶¶ 14, 26, plaintiff's fraud claim against Martin, the company's president and a non-signatory to the contract, is not duplicative.

### C.      Failure to State a Claim

Nevertheless, defendants' motion to dismiss plaintiff's claim for fraud against Martin for failure to state a claim is granted.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff," *Pauwels v. Deloitte LLP*, 83 F.4th 171, 189–90 (2d Cir. 2023) (citation omitted), or, in other words, "a representation of material fact, falsity, scienter, reliance, and injury," *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999).

Ordinarily, claims for fraud are subject to the strict pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To do so, a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996); *accord Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013). However, a defendant forfeits "the 9(b) particularity defense . . . if [the] defendant fails to raise it as an affirmative defense in his answer or in a motion to dismiss." *USA Certified Merchs., LLC v. Koebel*, 262 F.

15

Supp. 2d 319, 332 (S.D.N.Y. 2003); *see Todaro v. Orbit Int'l Travel, Ltd.*, 755 F. Supp. 1229, 1234 (S.D.N.Y. 1991).

Plaintiff argues defendants forfeited any Rule 9(b) particularity defense by failing to address it in their motion to dismiss. Pl.'s Opp'n 7. Even assuming, however, that defendants did effect such a forfeiture, plaintiffs' complaint still fails under the ordinary plausibility pleading standards that apply under Rule 8(a).

Plaintiff alleges that, "on or about December 1, 2019, Defendant Christopher Martin falsely represented to Richard Rubin . . . that the Corporation would competently and timely perform the Work in accordance with industry standards and adhere to its own budget." Compl. ¶ 38. Plaintiff asserts that this statement was "false" because Martin made it despite knowing "that the Corporation did not have the capital, expertise or capability to timely and competently complete the Work." *Id.* ¶ 39. As explained at pages 12–13, *supra*, this assertion is speculative and unsupported—plaintiff offers no factual support for the proposition that Attention to Detail was undercapitalized in December 2019, or that it did not have the "expertise or capability" to complete a seemingly run-of-the-mill home renovation job. Nor has plaintiff offered any allegations that would tend to show that Martin *knew* his company could not complete the job as promised when it entered the contract. *See Abelman v. Shoratlantic Dev. Co.*, 545 N.Y.S.2d 333, 334 (App. Div. 1989) ("Any inference drawn from the fact that the expectation of performance was not realized is insufficient to sustain a plaintiff's burden of showing that a defendant falsely stated his intentions."); *Powers v. British Vita, PLC*, 57 F.3d 176, 185 (2d Cir. 1995) ("[T]he mere non-performance of promises is insufficient to create an inference of fraudulent intent." (citation omitted)). These speculative and conclusory allegations thus do not raise an inference of fraud to the level of plausibility.

16

## V.  Leave to Amend

Plaintiff's request for leave to amend, *see* Pl.'s Opp'n 11–12, is granted.

"[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave is properly denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not previously amended its complaint; an amendment at this early stage in the litigation would not unduly prejudice Martin, who is on notice of the nature of the claims pressed against him; and the deficiencies identified by the Court's order today do not appear so insurmountable that permitting amendment would necessarily be futile. Additionally, defendants did not oppose plaintiff's request for leave to amend. *See generally* Defs.' Reply. Accordingly, plaintiff's request for leave to amend is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims against defendant Martin are dismissed, and defendants' motion is denied in all other respects. Plaintiff's request for leave to amend its complaint is granted. Plaintiff shall file its amended complaint within thirty days of this order.

SO ORDERED.

      /s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: March 31, 2025
      Brooklyn, New York