UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

THE RICHARD AND ANNE RUBIN FAMILY
TRUST,

                        Plaintiff,

            -against-

ATTENTION TO DETAIL CONSTRUCTION
CORP. and CHRISTOPHER MARTIN,

                        Defendants.
_____

**MEMORANDUM & ORDER**
**23-CV-9390 (NGG) (SIL)**

NICHOLAS G. GARAUFIS, United States District Judge.

This action arises out of a home renovation gone wrong. Plaintiff The Richard and Anne Rubin Family Trust ("Plaintiff") claims that Defendants Christopher Martin ("Martin") and his companies Attention to Detail Construction Corp. ("ADC"), and now AAA Attn. to Detail Construction Corp. ("AAA"), failed to complete the renovation of Plaintiff's summer home on time, on budget, and according to industry standards. After Judge Rachel P. Kovner granted in part and denied in part Martin and ADC's ("Defendants") motion to dismiss the Complaint, Plaintiff filed a First Amended Complaint ("FAC"), which Defendants seek to dismiss. With that motion pending, Plaintiff now seeks leave to file a Second Amended Complaint ("SAC").

The court GRANTS Plaintiff's motion for leave to amend its FAC to add AAA as a defendant in its SAC. The court GRANTS in part Defendants' pending Motion to Dismiss ("MTD") as it pertains to Plaintiff's claims against Martin and DISMISSES these claims.

## I.    BACKRGOUND

The facts underlying this dispute are set out in detail in Judge Kovner's previous Memorandum & Order granting in part and denying in part Defendants' first motion to dismiss. (Mem. & Ord.

1

("M&O") (Dkt. 29) at 2-3.) Judge Kovner ended her Order by granting Plaintiff's request for leave to amend. (*Id.* at 17.) Plaintiff timely filed the FAC. (*See* FAC (Dkt. 31).) As relevant here, the FAC contains a handful of new paragraphs alleging that Martin "is abusing and disregarding the corporate form to avoid liability in this action." (*Id.* ¶¶ 27-33.) And while Plaintiff had previously brought its breach-of-contract and unjust-enrichment claims against only Defendant ADC, (*see* Compl. (Dkt. 1) ¶¶ 25-36), Plaintiff now levels those claims against Martin as well, (*see* FAC ¶¶ 34-47).

On July 7, 2025, Defendants filed their motion to dismiss these claims. (*See* MTD (Dkt. 42-1).) They argued that the FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and under Rule 12(b)(7) for failure to join a necessary party. (*Id.* at 1.) Plaintiff opposed this motion on the merits. (*See* Pl's. Opp'n (Dkt. 42-9).)

On September 25, 2025, Plaintiff requested a pre-motion conference to further amend the Complaint in light of new evidence revealed through discovery. (*See* Letter Mot. for PMC (Dkt. 45).) With Judge Kovner's consent, Plaintiff subsequently filed a motion seeking permission to file a SAC so that it could add a new defendant, AAA. (Pl.'s Mot. for Leave to Amd. ("Mot.") (Dkt. 49-5) at 2.) Plaintiff asserts (and Defendants agree) that this new company—not Defendant ADC—"performed the renovation work at Plaintiff[']s home." (*Id.*; *see* MTD at 3 & n.1 (noting that the contract "was actually entered into by the Trust and AAA as ADC had not even been formed at that time").)[1]

Defendants filed a motion "in partial opposition" to Plaintiff's request. (*See* Defs.' Partial Opp'n to Leave to Amd. ("Partial Opp'n")

---

[1] *See infra* Section III.A for a more complete discussion of the creation of each entity and confusion surrounding the alleged participation of each in the contracting and construction process.

(Dkt. 50-1) at 1.) Defendants explain that they "do not object to Plaintiff's request for leave to amend their Complaint a second time," but they nonetheless argue that "the proposed Second Amended Complaint is palpably insufficient and devoid of merit." (*Id.*) Defendants maintain that Plaintiff "cannot hold ADC and AAA jointly and severally liable, as this is a breach of contract claim and both entities did not enter jointly into an agreement with Plaintiff[] to perform work at the Property." (*Id.*) And Defendants add that, if Plaintiff is given leave to file a SAC, this court should still "consider the merits of the pending motion to dismiss as they pertain to Martin individually." (*Id.* at 4-5.) Plaintiff did not reply.

## II.    LEGAL STANDARD

In assessing the futility of amending a complaint, the court applies the same standard when ruling on a motion to dismiss made under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss").[2] That Rule permits defendants to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires plaintiffs to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and any addition of emphasis or alteration to the original in quoted text is adopted.

proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

When considering a motion under Rule 12(b)(6), a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, and (iii) documents the plaintiff relied on and knew of when bringing suit. *See, e.g., ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). The court must accept all facts alleged in the complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id.* at 678-79.

## III.    APPLICATION

### a.  Joint and Several Liability

Defendants argue in two pages that leave to amend should be denied insofar as Plaintiff's proposed SAC adds a theory of joint and several liability. (Partial Opp'n 2-4.) Given the current state of the record and briefing materials, however, the court permits Plaintiff to plead a theory of joint and several liability in its SAC.

First, a primer: "Joint and several liability, primarily a tort law concept, imposes on each wrongdoer responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss. The rationale for such liability is that the wrongdoers are considered part of a joint enterprise and a mutual agency such that the act of one is the act of all and liability for all that is done is visited upon each." *Matter of Seagroatt Floral Co., Inc.*, 78 N.Y.2d 439, 448 (1991).

Defendants contend that "unless both AAA and ADC jointly entered into a written or oral agreement with Plaintiff to perform the subject work at the Property, joint and several liability cannot

4

attach as a matter of law." (Partial Opp'n at 3.) That is largely accurate. *See On Time Constr., Inc. v. 329 E. 58, LLC*, 188 N.Y.S.3d 45, 47-48 (1st Dep't 2023) (trial court erred by treating defendants as jointly and severally liable when defendants were not parties to each other's contracts); 12 Williston on Contracts § 36:5 (4th ed. 2025) ("As a general rule, copromisors are liable jointly if all of them have promised the entire performance which is the subject of the contract."). The court adds only that "all of the parties who induce a breach of contract are jointly and severally liable to the plaintiff." *On Time Constr.*, 188 N.Y.S.3d at 48; *Hornstein v. Podwitz*, 254 N.Y. 443, 449 (1930).

The problem is that the current record, taken as a whole, does not show that formal agreements were executed between Plaintiff and *either* AAA or ADC. Defendants attached two "agreements" to their motion to dismiss. (*See* Dec. 2019 Agreement (Dkt. 42-5); Aug. 2022 Agreement (Dkt. 42-6)). But neither of these agreements is signed by Plaintiff. (*See* Dec. 2019 Agreement at 18-19 (blank signature pages); Aug. 2022 Agreement at 9-10 (same).) Defendant Martin's deposition testimony corroborates the notion that no formal contract was executed between the parties. Martin attested that "there were multiple agreements and multiple new agreements, work revisions, changes" but that he was not aware "of any document that is signed by [him] and signed by the Rubins regarding the property." (*See* Pl.'s Ex. A (Dkt. 49-2) at 71:25-73:4.) Judge Kovner's previous M&O similarly noted that it was unclear whether any formal agreement between the parties was ever formed. (*See* M&O at 10.) Accordingly, any contract alleged must have been created by performance. *See* Restatement (Second) of Contracts § 50(2) (recognizing contracts can be formed by performance); *Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 256 n.6 (S.D.N.Y. 1995) (interpreting New York law to find that "mutual assent between the parties, even though oral or informal, to exchange acts or promises is sufficient to create a binding

5

contract") (citing *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 570 (2d Cir.1993)).

That said, Plaintiff's pleadings do suggest that Defendant ADC did not exist as an entity until *after* any contract between the parties was formed. The FAC explains that Defendant Martin approached Plaintiff in December 2019 "to undertake the obligation to renovate a home." (FAC ¶ 12.) "Later that same month"— again, December 2019—Defendant ADC supposedly "agreed to perform work, labor and provide materials to completely renovate the Property as general contractor." (*Id.* ¶ 14.) But Exhibit B to Plaintiff's FAC shows that ADC did not exist until a month later. (*See* Ex. B (Dkt. 31-2) at ECF p. 2.) Exhibit C, by contrast, shows that AAA was formed in 2011. (*See* Ex. C (Dkt. 31-3) at ECF p. 2.) Therefore in December 2019, the only corporation that could have formed a contract was AAA.

However, the court declines to deny amendment for the joint and several liability claim as futile at this stage of the proceedings. Between the murkiness of ADC's involvement in this dispute, and the scant briefing on the issue of joint and several liability, such a ruling would be premature. For one thing, there is no signed contract between *any* parties. (*See* Dec. 2019 Agreement at 18-19; Aug. 2022 Agreement at 9-10.) For another, several of Defendants' past representations regarding the relationship between ADC and AAA are ambiguous, including representations by Martin that presumably led Plaintiff to wire $50,000 to ADC on one occasion. (*See* Exh. 7, Wire Transfers (Dkt. 42-8) at ECF p. 2 (wire addressed to "Attention to Detail"); *cf. id.* at ECF p. 3 (wire addressed to "AAA Attention to Detail"); *see also* Exh. A at Tr. 87:20-88:11 (noting one wire was sent to "Attention to Detail and not AAA"); *id.* at Tr. 92:24-96:5 (Martin acknowledging that he did not specifically distinguish "between the two companies" to Plaintiff)). For another still, other non-parties discussed in the transcript refer to the working entity as ADC. (*See id.* at Tr. 121:2-

11 (testimony of a Mr. Romanelli describing the work performed as "by Attention to Detail Construction, Corp.").) So the court permits Plaintiff to amend its complaint to add AAA as a party and declines Defendants' invitation, at this moment, to rule that Plaintiff cannot maintain a claim for joint and several liability as against AAA and ADC.

### b. Relief as to Martin

The court heeds Defendants' request to consider the pending motion to dismiss Plaintiff's claims as to Martin and GRANTS the motion to dismiss Plaintiff's claims as against Martin personally. To be sure, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) (citing *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999)). But district courts still retain discretion to "consider the merits" of the underlying motion to dismiss "in light of the amended complaint." *Illiano v. Mineola Union Free Sch. Dist.*, 585 F. Supp. 2d 341, 349 (E.D.N.Y. 2008) (quoting *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)). The court exercises that discretion here and finds that Plaintiff cannot state a claim against Martin.

Plaintiff seeks to bring breach-of-contract and unjust-enrichment claims against all Defendants, including Martin. These claims are futile as against Martin.

First, corporate officers like Martin "may not be held personally liable on contracts of their corporations, provided they did not purport to bind themselves individually under such contracts." *Westminster Const. Co. v. Sherman*, 554 N.Y.S.2d 300, 301 (2d Dep't 1990); *JT Queens Carwash, Inc. v. JDW & Assocs., Inc.*, 45 N.Y.S.3d 100, 104 (2016) (collecting cases for this proposition).

7

Plaintiff's proposed SAC alleges that Plaintiff entered into a contract with ADC (*see* SAC ¶ 37)—not Martin. So Martin cannot be held individually liable on Plaintiff's breach-of-contract claim.

Second, Plaintiff's unjust enrichment claim as against Martin must be dismissed because either AAA or ADC is the entity who "charged" Plaintiff for their services. (*See* SAC ¶ 46 ("[T]he Corporation was paid $604,265.31 by the Plaintiff[].").) Martin thus "neither billed those fees nor established any entitlement thereto" which vitiates any unjust enrichment claim. *Am. Exp. Travel Related Servs. Co. v. N. Atl. Res., Inc.*, 691 N.Y.S.2d 403, 404 (1st Dep't 1999). And, in any event, it is well-established that "a nonsignatory to a contract cannot be held liable where there is an express contract covering the same subject matter" under a theory of unjust enrichment. *Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*, 880 N.Y.S.2d 807, 808 (4th Dep't 2009); *see also Glob. World Realty, Inc. v. Zubli*, 196 N.Y.S.3d 765, 768 (2d Dep't 2023) (unjust enrichment claim "precluded by the existence of a contract governing the subject matter of the dispute"). It is undisputed that Martin is not a signatory to any contract and that the contract between Plaintiff and AAA or ADC covers "the same subject matter" for which Plaintiff wishes to hold Martin liable: the renovation of the property. Accordingly, Martin cannot be held individually liable for Plaintiff's unjust-enrichment claim.

Plaintiff also attempts to assert its breach-of-contract and unjust-enrichment claims against Martin based on piercing the corporate veil. "[T]he standard for veil-piercing is very demanding," and "disregard of the corporate form is warranted only in extraordinary circumstances." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners LP*, 491 B.R. 335, 347 (S.D.N.Y. 2013) (discussing New York law). A party seeking to pierce the corporate veil under New York law must sufficiently allege that (1) "the owner exercised complete domination over the corporation with respect to the transaction at issue," and (2) "such domination

was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001). In assessing whether the first element of "domination" is met, the Second Circuit has identified a non-exhaustive list of ten factors to consider:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity[;] and (10) intermingling of property between the entities.

*Id.*

Judge Kovner previously rejected Plaintiff's attempt at veil-piercing. (*See* M&O at 10-14.) This court does so again today. As before, the only allegations in both the FAC and proposed SAC bearing on Martin's control over either ADC or AAA are conclusory. The SAC baldly states that ADC "has disregarded corporate formalities, is inadequately capitalized, and intermingled funds with another affiliate nonparty AAA Attn to Detail Construction Corp.," but it provides no facts to support that assertion. (*See* SAC ¶ 28.)

The SAC also alleges that ADC and AAA "share the same office space," share "the same ownership—Christopher Martin," and "conduct the exact same business, construction renovation." (*Id.* ¶ 29.) But "sharing a common claim of ownership or common office address, standing alone, is insufficient to pierce the corporate veil." *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, No. 18-CV-12255 (MKV) (KHP), 2021 WL 4264033,

at \*5 (S.D.N.Y. Sept. 20, 2021) (citing *Kalin v. Xanabo, Inc*, 526 F. Supp. 2d 392, 404 (S.D.N.Y. 2007)).

Plaintiff's other allegations—that AAA has been named a defendant in two similar lawsuits, (*see* SAC ¶ 30), that "the only home improvement license produced in this action named only" AAA, (*id.* ¶ 31), that ADC did not exist at the time the parties agreed on the renovation terms, (*see id.* ¶ 32), and that ADC "hired several subcontractors" and "failed to pay at least one of those subcontractors" (*id.* ¶ 33)—do not speak to whether Martin "exercised complete domination over the corporation with respect to the transaction at issue," and whether "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult*, 268 F.3d at 63. Plaintiff also fails to allege, "supported by factual allegations," that it was harmed by a specific fraud Martin achieved by allegedly abusing the corporate form. *Iqbal*, 556 U.S. at 678-79. The allegation that Martin is "avoiding liability" in this action is a "conclusory statement." *Id.*

Accordingly, Plaintiff cannot state a claim against Martin under a veil-piercing theory, either. The claims against Martin are therefore DISMISSED.

## IV.    CONCLUSION

Plaintiff's motion to file a Second Amended Complaint is GRANTED. Defendant's motion to dismiss is GRANTED IN PART. The court DISMISSES the claims against Defendant Martin, as the proposed Second Amended Complaint continues to fail to allege any viable claim against him.

SO ORDERED.


Dated:    Brooklyn, New York
          March 10, 2026

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

11